1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2  450 Golden Gate Ave (11th Floor)
   San Francisco, CA 94102
3  Telephone: (415) 436-7200

4  Attorneys for the United States

**FILED**
AUG 05 2019
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

UNITED STATES OF AMERICA,           )  CRIMINAL NO. **CR 19 71176 MAG**
                                    )
       Plaintiff,                   )
                                    )  NOTICE OF PROCEEDINGS ON
       v.                           )  OUT-OF-DISTRICT CRIMINAL
                                    )  CHARGES PURSUANT TO RULES
   Jeffrey Cranford                 )  5(c)(2) AND (3) OF THE FEDERAL RULES
                                    )  OF CRIMINAL PROCEDURE
       Defendant.                   )
                                    )
_____)

   Please take notice pursuant to Rules 5(c)(2) and (3) of the Federal Rules of Criminal

Procedure that on _____, the above-named defendant was arrested based upon an

arrest warrant (copy attached) issued upon an

   ☒ Indictment   ☐ Information   ☐ Criminal Complaint   ☐ Other _____

pending in the __Western__ District of __Tennessee__, Case Number __18cr 20103 JTF__

   In that case, the defendant is charged with a violation(s) of Title(s) ____ United States Code,

Section(s) ____ .

Description of Charges: _____.


                                           Respectfully Submitted,
                                           DAVID L. ANDERSON
                                           UNITED STATES ATTORNEY


Date: __Aug 5, 2019__                      _____
                                           Assistant U.S. Attorney

1

IRELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 18-CR-20103-JTF |
| v. | ) | |
| | ) | |
| AYANA SAUNDERS, | ) | 18 USC § 1349 |
| CAESAR ORUADE, | ) | 18 USC § 1343 |
| a/k/a CAESAR ORAUDE, | ) | 18 USC § 1956(h) |
| | ) | 18 USC § 981 & 982 |
| JEFFREY CRANFORD, and | ) | 18 USC § 2 |
| MARTIN HATTEN, | ) | |
| | ) | |
| Defendants. | ) | |

# SUPERSEDING INDICTMENT

**THE GRAND JURY CHARGES:**

Background

At all times relevant to this Indictment:

1. A "business email compromise" (BEC) is a type of computer intrusion that occurs when an employee of a company is fooled into interacting with an email message that appears to be, but is not, legitimate. The bogus email usually contains either an attachment or a link to a malicious website. Clicking on either will release a virus, worm, spyware or other program application (also known as "malware") that subsequently infects the employee's email account and/or computer. Frequently, the malware spreads throughout the business' entire computer network. The malware, once executed, can harvest information, including credentials, and give the intruding party access to sensitive company information.

2. In one common BEC scam, an intruder monitors email to determine when a large financial transaction is going to take place. After initial transfer or wiring instructions are conveyed between legitimate parties to the transaction, the intruder sends a follow-up email that appears to be coming from the original legitimate sender. This "spoofed" email contains a change of plans, instructing that the money being wired go instead to a different account—one that is under the intruder's control and set up for the purpose of receiving the redirected funds.

3. Electronic mail (email) is sent and received over the Internet. Data sent over the Internet is broken up into manageable chunks known as "packets."

4. "Company A" is a full-service real estate company headquartered in Memphis, Tennessee, with 115 offices and more than 3,000 licensed sales associates located throughout its nine-state area of service. Company A's email servers are maintained in Memphis.

5. "Company B" is a corporate conglomerate that provides retirement plans, employee benefits, annuities, and life insurance through a national network of independent distributors. Company B is headquartered in Bellevue, Washington.

6. J.F. is a real estate agent in the Western District of Tennessee.

7. A.H. is a resident of the Western District of Tennessee.

8. SunTrust Bank is a subsidiary of SunTrust Banks, Inc., a bank holding company, headquartered in Atlanta, Georgia. SunTrust Bank operates branches in the Western District of Tennessee.

9. CitiBank is the consumer division of financial services multinational corporation Citigroup, headquartered in New York City, New York.

2

10. Bank of America is a multinational financial services company headquartered in Charlotte, North Carolina, and operating bank branches in the Western District of Tennessee.

11. M.D.W. is a Memphis-based association of attorneys that facilitates closings on the sale of real estate.

12. Reside Equity Properties, LLC, is a real estate company registered in Nevada and operating in the San Francisco, California, area.

13. FortuneBuilders, Inc. ("FortuneBuilders") is a real estate investment and education company. FortuneBuilders is headquartered in San Diego, California, but conducts seminars and workshops throughout the United States.

14. A "hard money" loan is a specific type of asset-based financing whereby a borrower receives funds secured by real property. Typically issued by private investors or companies over a short amount of time, hard money loans feature higher interest rates than conventional loans due to the higher risk associated with them.

15. **JEFFREY CRANFORD** is a citizen of the United States residing in California, who utilized and controlled at least two CitiBank accounts (hereinafter, the "Accounts") over the course of the conspiracy. CRANFORD also used and controlled the following email and/or social media accounts, among others: Jeff.cranford@gmail.com, Jeff.cranford56@gmail.com, and crandaddy56.4262014@gmail.com.

16. **CAESAR ORUADE** is a United States citizen who, at times material to this indictment, resided in Los Angeles, California.

3

17. **AYANA SAUNDERS** is a United States citizen who, at times material to this indictment, resided in Los Angeles, California.

18. **MARTIN HATTEN** is a United States citizen who, at times material to this indictment, resided in Louisiana and Texas.

19. K.D. is a United States citizen who, at times material to this indictment, resided in California.

20. S.H. is a United States citizen who, at times material to this indictment, resided in California.

21. J.T. is a United States citizen who, at times material to this indictment, resided in New York.

22. H.G. is a United States citizen who, at times material to this indictment, resided in California.

23. C.C. is a United States citizen who, at times material to this indictment, resided in the San Francisco, California area.

24. C.B.V. and G.V. are United States citizens who, at times material to this indictment, resided in the San Francisco, California area.

25. N.V. is a United States citizen who, at times material to this indictment, resided in the San Francisco, California area.

26. B.V. is a Canadian citizen who, at times material to this indictment, resided in the Saskatchewan province.

27. A.K. is a United States citizen who, at times material to this indictment, resided in Moraga, California.

4

28.     S.D.T. is a United States citizen who, at times material to this indictment, resided in Anchorage, Alaska.

## COUNT 1

### Conspiracy to Commit Fraud – 18 U.S.C. §1349

Paragraphs 1 through 28 are re-alleged and incorporated by reference as if fully set forth herein.

29.     Beginning in at least February 2017, and continuing until at least April 2018, in the Western District of Tennessee and elsewhere, the defendants,

**AYANA SAUNDERS**
**CAESAR ORUADE**
**JEFFREY CRANFORD**
**MARTIN HATTEN**

knowingly conspired and agreed with persons known and unknown to the grand jury, to commit the offenses of wire fraud and bank fraud; that is, the defendant:

(a) Pursuant to Title 18, United States Code, Section 1343, devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute such scheme and artifice, transmitted and caused to be transmitted in interstate and foreign commerce certain wire communications; and,

(b) Pursuant to Title 18, United States Code, Section 1344, knowingly executed and attempted to execute a scheme and artifice to obtain funds under the custody and control of financial institutions, by means of false and fraudulent pretenses, representations, and promises.

5

## Object of the Conspiracy

30. It was the object of the conspiracy that the defendants and their coconspirators would unjustly enrich themselves through various financial frauds via the internet—including BECs, romance scams, and advance-fee scams. Proceeds from these financial frauds were transferred through and from the United States to Africa via a complex network of both complicit and unwitting individuals.

## Manner and Means

The object of the conspiracy was to be accomplished by the following manner and means, among others:

31. It was a part of the conspiracy that a member of the conspiracy would obtain, or cause to be obtained, unauthorized access into potentially vulnerable email and/or business servers. After gaining unauthorized access, members of the conspiracy would monitor the email accounts of professionals in these businesses to determine when fund transfers were scheduled to occur. Thereafter, a member of the conspiracy would, in general, spoof emails and send communications, or cause emails to be spoofed and sent, under the identity of the target of the spoof, and in particular, the emails of parties to financial transactions involving real estate. These spoofed emails would redirect wires and transfers of funds to accounts under the control of members of the conspiracy.

32. It was a part of the conspiracy that members of the conspiracy would identify and recruit potential money mules—both witting and unwitting—through the perpetuation of various online scams, including romance scams and advance-fee scams. Coconspirators would carry on, or cause to be carried on, fictitious online romantic and/or

business relationships with money mules to convince these individuals to carry out various acts in furtherance of the conspiracy.

33. It was a part of the conspiracy that **ORUADE, SAUNDERS, CRANFORD, HATTEN**, and/or others would open, or cause to be opened, bank accounts for the purpose of receiving fraudulently obtained funds, and then send fraudulently obtained funds to other accounts under the control of members of the conspiracy, including accounts maintained by money mules.

34. It was a part of the conspiracy that **ORUADE** and/or **SAUNDERS** would receive fraudulently obtained funds into financial accounts under the pretense of soliciting investor funds for the Nigerian film industry. Over the life of the conspiracy, **CRANFORD**, B.V., A.K. and others transferred illicit proceeds to **ORUADE** and/or **SAUNDERS** despite having no connection to the Nigerian film industry.

35. It was part of the conspiracy that **CRANFORD**, while working with coconspirators located overseas, would trick members of his FortuneBuilders network into paying fees associated with hard money loans. **CRANFORD** would use money from these investors to fund financial ventures with coconspirators located outside the United States, and in doing so, would promote the objectives of the conspiracy. **CRANFORD** never repaid his FortuneBuilders investors.

36. In order to accomplish the object of the conspiracy, **ORUADE, SAUNDERS, CRANFORD**, and/or **HATTEN** committed the following acts, among others, in furtherance of the conspiracy:

7

a.  On or about March 13, 2017, **CRANFORD** opened two Citibank accounts, one ending in -6554 and the other ending in -6562, in the name of Reside Equity Properties, LLC.

b.  On or about March 26, 2010, **CRANFORD** opened a Citibank account, ending in -9766 in the name of **CRANFORD** and his wife. **CRANFORD** has multiple other accounts with CitiBank, including an account in his name ending in -5656.

c.  On or about April 28, 2017, **SAUNDERS** opened a Bank of America account, ending in -4396 in the name Ayana Saunders LLC.

e.  On or about December 22, 2016, **SAUNDERS** opened a CitiBank account, ending in -1564 in the name Ayana Saunders LLC.

f.  On or about January 31, 2017, **HATTEN** opened a Citibank account in his name that ended in -6002.

g.  On or about April 19, 2017, **CRANFORD** messaged C.B.V, G.V, and H.G. the following: "Hi [C.V.] can you wire another 50k asap? My loan is being held up by the 1% tax law to the Feds. If I wire the 50k tomorrow morning I will get the $5 million Monday and I will give you $125k back. My info should be on your computer account already please."

h.  On or about April 19, 2017, C.B.V. and G.V. sent **CRANFORD** approximately $50,000.00 in a transaction that included $5,000.00 in cash and $45,000.00 in a wire transfer. C.B.V. and G.V. sent these funds based on **CRANFORD**'s misrepresentation that C.B.V. and G.V. would receive a high rate of return on the short-term loan.

i.  On or about April 27, 2017, **CRANFORD** sent a wire transfer of approximately $40,000.00 to S.D.T.

8

j.     On or about May 8, 2017, K.D. and S.H. wired **CRANFORD** approximately $50,000.00 from their 401k investment account based on **CRANFORD**'s misrepresentation that K.D. and S.H. would receive a high rate of return on the short-term loan.

k.     On or about May 10, 2017, **CRANFORD** text messaged the following to an unknown coconspirator who used the name "David Lessnick": "K I don't care I just know after the fraud and now this I am out of money and favors."

l.     On or about May 11, 2017, K.D. and S.H. sent two separate wire transfers of approximately $25,000.00 to **CRANFORD** based on his misrepresentation that K.D. and S.H. would receive a high rate of return on the short-term loan.

m.     On or about May 16, 2017 **CRANFORD** asked C.B.V. and G.V. to wire approximately $10,000.00 to S.D.T. based on urgent circumstances.

n.     On or about May 18, 2017, an unknown coconspirator using the name "Marc Jeffrey" text messaged **CRANFORD** the following: "They [the bank] may ask you what the transaction is for don't fail to inform them that the transaction is for business don't tell the bank is for any form of loan.   Get back to me asap."

o.     On or about May 21, 2017, **CRANFORD** text messaged "Marc Jeffrey" that the bank had accused Marc Jeffrey of being "a liar," with **CRANFORD** claiming that he "should have just choose[sic] the slower but proper way" to do transactions.

p.     On or about May 22, 2017, C.C. sent **CRANFORD** approximately $6,000.00 based on **CRANFORD**'s misrepresentation that C.C. would receive a high rate of return on the short-term loan.

9

q. On or about May 23, 2017, **CRANFORD** text messaged Marc Jeffrey that, "S.D.T.'s bank called all the frozen wires. Just so you now[sic]. They said she has been wiring money to Africa and the Middle East."

r. Before on or about May 25, 2017, unknown coconspirators executed a BEC on the email account of real estate agent J.F., and separate email accounts used by M.D.W.

s. Before on or about May 25, 2017, unknown coconspirators obtained information worth in excess of $5,000—that is, the closing information of a real estate transaction, which was worth approximately $76,360.55—after gaining unauthorized access into the email servers of J.F. and/or M.D.W.

t. Before on or about May 26, 2017, unknown coconspirators instructed A.H. to wire funds that had been obtained from the actions in the preceding paragraph to a Citibank account ending in -6554 and in the name of Reside Equity Properties, **CRANFORD's** company.

u. On or about May 25, 2017, an unknown coconspirator who used the name "Mark Jiran" directed **CRANFORD** to wire approximately $8,000.00 to **SAUNDER's** CitiBank account, which was held in the name of Ayana Saunders LLC. On or about May 26, 2017, **CRANFORD** wired approximately $8,000.00 to **SAUNDERS's** CitiBank account, held in the name of Ayana Saunders LLC.

v. On or about May 30, 2017, **CRANFORD** and unknown coconspirators wired $34,500.00 from the CitiBank account ending in -6554 to a Bank of America account ending in -6536 and in the name of J.T. in New York, with the message, "hurry."

10

w.  On or about May 30, 2017, **CRANFORD** and unknown coconspirators withdrew $30,000.00 from the CitiBank account ending in -6554 and transferred it to a bank account ending in -0002, in the name of **HATTEN**.

x.  On or about May 31, 2017, **CRANFORD** and unknown coconspirators withdrew $10,000.00 from the CitiBank account ending in -6554 and deposited it into a CitiBank account ending in -6562, also in the name of Reside Equity Properties.

y.  From on or about May 31, 2017, through June 1, 2017, **HATTEN** wired three transactions of approximately $9,000.00 each from the bank account ending in -0002 to "Olufemi Osasona" in Nigeria.

z.  On or about June 2, 2017, J.T. wired approximately $34,100.00 from her Bank of America account ending in -6536 to "Next Executive" in Nigeria. The wire included the notation, "family support."

aa.  On or about June 9, 2017, **CRANFORD** wired $13,000.00 to **SAUNDERS's** CitiBank account, held in the name of Ayana Saunders LLC.

bb.  On or about June 16, 2017, **CRANFORD** wired $20,000.00 to **SAUNDERS's** CitiBank account, held in the name of Ayana Saunders LLC.

cc.  On or about June 28, 2017, **CRANFORD** wired $22,000.00 to **SAUNDERS's** CitiBank account, held in the name of Ayana Saunders LLC.

dd.  On or about May 30, 2017, **SAUNDERS** wired $7,200.00 to **ORUADE** at his Guaranty Trust account in Nigeria.

ee.  On or about June 13, 2017, **SAUNDERS** wired $14,750.00 to **ORUADE** at his Guaranty Trust account in Nigeria.

11

ff. On or about June 19, 2017, **SAUNDERS** wired $18,000.00 to **ORUADE** at his Guaranty Trust Bank account in Nigeria.

gg. On or about June 30, 2017, **SAUNDERS** wired $19,800.00 to **ORUADE** at his Guaranty Trust account in Nigeria.

hh. On or about September 16, 2017, **CRANFORD** used a money transfer service at Walmart to receive approximately $1,010.00 and then immediately wire $490.00 to Nigeria.

ii. On or about September 20, 2017, **CRANFORD** used a money transfer service at Walmart to receive approximately $542.00 and then immediately wire $440.10 to Nigeria.

jj. On or about October 2, 2017, **CRANFORD** used a money transfer service at Walmart to receive approximately $250.00 and then immediately wire $240.10 to Nigeria.

kk. On or about September 15, 2017 through October 10, 2017, an unknown coconspirator under the name of "Mark Jiran" tricked B.V. into wiring $45,200.00 to **SAUNDERS's** Bank of America account, held in the name of Ayana Saunders LLC.

ll. Before on or about October 20, 2017, unknown coconspirators executed a BEC on email accounts used by Company B.

mm. Before on or about October 20, 2017 unknown coconspirators obtained information worth in excess of $5,000—that is, invoices from a known vendor of Company B that directed payment of approximately $164,499.27—after gaining unauthorized access to email accounts.

12

nn.   Before on or about October 20, 2017, unknown coconspirators instructed employees of Company B to wire funds that had been obtained from the actions in the preceding subparagraph to a bank account controlled by A.K.

oo.   On or about October 24, 2017, A.K. wired approximately $50,000.00 to **SAUNDERS's** Bank of America account, held in the name of Ayana Saunders LLC.

pp.   On or about October 25, 2017, **SAUNDERS** wired $35,000.00 to **ORUADE** at his Guaranty Trust Bank account in Nigeria.

All in violation of Title 18, United States Code, Sections 1349.

## COUNT TWO

### Wire Fraud – 18 U.S.C. § 1343

The facts set forth in paragraphs 1 through 36 are re-alleged and incorporated by references as if fully set forth herein.

37.   In or about May 25, 2017, in the Western District of Tennessee and elsewhere, the defendants, **JEFFREY CRANFORD** and **MARTIN HATTEN,** devised and intended to devise a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

38.   From on or about May 26, 2017 through May 31, 2017, for the purpose of executing the scheme described above, and attempting to do so, the defendants caused to be transmitted by means of wire communication in interstate commerce, the signals and sounds described below for Count Two as follows:

| 2 | 7/25/16 | JEFFREY CRANFORD accepted a $ $76,360.55 wire transfer, representing the proceeds of a BEC of Company A in Memphis, TN, into his CitiBank account ending in 6554, and then subsequently transferred approximately $30,000 of those funds to a Bank of American account |

13

|  |  | ending in 0002 in the name of **HATTEN**. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT THREE
### Money Laundering – 18 U.S.C. § 1956(h)

The facts set forth in paragraphs 1 through 36 above are re-alleged and incorporated by reference as if fully set forth herein.

39. Beginning in at least February 2017, and continuing until at least April 2018, in the Western District of Tennessee and elsewhere, the defendants,

**AYANA SAUNDERS
CAESAR ORUADE
JEFFREY CRANFORD
MARTIN HATTEN**

did knowingly combine, conspire and agree with persons known and unknown to the grand jury, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, specifically to knowingly conduct and attempt to conduct, financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud, bank fraud, and unauthorized access of a protected computer, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity; all in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i). The manner and means used to accomplish the objectives of the conspiracy included, among

others, all of the acts described in paragraphs 31 through 36 of this Indictment, all in violation of Title 18, United States Code, Sections 1956(h) and 2.

## NOTICE OF INTENT TO SEEK FORFEITURE

1. The allegations contained in Counts One through Three of this indictment are re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1) and (2)(A) and (B), and Title 28 United States Code, Section 2461(c).

2. Upon conviction for violating Title 18, United States Code, Section 1349, conspiracy to commit wire fraud, set forth in Count One of this indictment, the defendants

**AYANA SAUNDERS**
**CAESAR ORUADE**
**JEFFREY CRANFORD**
**MARTIN HATTEN**

shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 982(a)(2)(B):

 a. pursuant to Title 18, United States Code, Sections 982(a)(2)(B), any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense; and

 b. The property to be forfeited includes, but is not limited to:

  1. Real and personal property, electronic devices, construction materials, bank accounts, and

  2. A sum of money equal to the proceeds derived from or obtained as a result of such offense.

15

If any of property described above, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to or deposited with a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

d. has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property, to include:

a. the property located at 5254 Pooks Hill Rd, Bethesda, Maryland;

all pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)); all pursuant to Title 18, United States Code, Sections 982(a)(2)(B), 982(b), and Title 21, United States Code, Section 853.

4. Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, § 1956 as charged in Count 3 of this indictment, the defendants

**AYANA SAUNDERS
CAESAR ORUADE
JEFFREY CRANFORD
MARTIN HATTEN**

shall forfeit to the United States any property, real or personal, involved in such offense and any property traceable to property. The property to be forfeited includes, but is not limited to, the following:

a. residences and real property;

16

  b. vehicles;

  c. electronic devices;

  d. currency and bank accounts; and

  e. personal items.

Further, if any property described above, as a result of any act or omission of the defendants:

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to or deposited with a third party;

  c. has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property, to include:

  a. the property located at 5254 Pooks Hill Rd, Bethesda, Maryland;

all pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

              **A TRUE BILL:**

              _____

              **F O R E P E R S O N**

_____
**D. MICHAEL DUNAVANT**
**UNITED STATES ATTORNEY**

_____
**DATE**

IRELAND

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. <u>18-CR-20103-JTF</u> |
| v. ) | |
| ) | |
| AYANA SAUNDERS, ) | 18 USC § 1349 |
| CAESAR ORUADE, ) | 18 USC § 1343 |
|    a/k/a CAESAR ORAUDE, ) | 18 USC § 1956(h) |
| ) | 18 USC § 981 & 982 |
| JEFFREY CRANFORD, and ) | 18 USC § 2 |
| MARTIN HATTEN, ) | |
| ) | |
| Defendants. ) | |

## NOTICE OF PENALTIES

### COUNT 1

**[Conspiracy to Commit Fraud – 18 U.S.C. §1349]**

AYANA SAUNDERS
CAESAR ORUADE
JEFFREY CRANFORD
MARTIN HATTEN

Nmt 20 yrs., nmt $250,000 fine, or both, plus a period of supervised release of nmt 3 yrs.; together with a mandatory special assessment of $100, <u>see</u> 18 U.S.C. 3013(a).

### COUNT 2

**[Wire Fraud – 18 U.S.C. §1343]**

JEFFREY CRANFORD
MARTIN HATTEN

Nmt 20 yrs., nmt $250,000 fine, or both, plus a period of supervised release of nmt 3 yrs.; together with a mandatory special assessment of $100, <u>see</u> 18 U.S.C. 3013(a).

## COUNT 3

### [Money Laundering – 18 U.S.C. §1956(h)]

**AYANA SAUNDERS**
**CAESAR ORUADE**
**JEFFREY CRANFORD**
**MARTIN HATTEN**

Nmt 20 yrs., nmt $500,000 fine or twice the value of the property involved in the transaction, whichever is greater, plus a period of supervised release nmt 3 yrs., together with a mandatory special assessment of $100, see 18 U.S.C. 3013(a).